IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| DARRELL JONES | ) | |
| | ) | |
| **Plaintiff** | ) | CIVIL ACTION NO. |
| | ) | |
| v | ) | |
| | ) | |
| TIYA SUPPORT SERVICES, LLC | ) | JURY TRIAL DEMANDED |
| | ) | |
| **Defendant** | **)** | |
| _____ | _) | |

## COMPLAINT

COMES NOW Plaintiff Darrell Jones and respectfully shows as follows:

## INTRODUCTION

This is a proceeding for a declaratory judgment as to Plaintiff's rights and for a permanent injunction, restraining Defendant from maintaining a policy, practice, custom or usage of discrimination against Plaintiff because of race. The Complaint also seeks restitution to Plaintiff of all rights, privileges, benefits, and income that would have been received by Plaintiff but for Defendant's unlawful and discriminatory practices.

Further, Plaintiff seeks such equitable relief, including back pay and a reasonable amount of front pay until a corrective promotion may be had, as to which he may be entitled. Plaintiff avers that Defendant acted to deny Plaintiff his rights under the laws of the United States of America and such action was designed

1

to intentionally discriminate against Plaintiff who is a member of a protected class, as he is black.

Additionally, Plaintiff suffered actionable retaliation after complaining about racial mistreatment.

## PARTIES, JURISDICTION and VENUE

### 1.

Plaintiff is a black male citizen of the State of Alabama but submits himself to the jurisdiction of this court.

### 2.

TIYA Support Services, LLC is a body corporate headquartered in Baton Rouge, Louisiana but maintains a corporate presence and facilities in the Middle District of Georgia and is subject to the jurisdiction of this court.

### 3.

Plaintiff files this Complaint and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 2201, and 28 U.S.C. § 2202 to obtain declaratory relief and compensatory and punitive damages. Defendant violated Plaintiff's rights as guaranteed by the Constitution of the United States and by Federal law, particularly, 42 U.S.C. § 2000e, 42 U.S.C. §§ 1981. and 1988. Defendant violated Plaintiff's rights as guaranteed by the Constitution of the United States, 28 U.S.C. § 1343 (civil rights) and by other Federal law.

**4.**

The unlawful violations of Plaintiff's civil rights were committed within the Middle District of Georgia. Venue is proper in this Court under 28 U.S.C. § 1391(b) as every act of which Plaintiff complained occurred in the Columbus Division of the United States District Court for the Middle District of Georgia.

## NATURE OF PROCEEDINGS

**5.**

Plaintiff avers that Defendant's actions were designed to prevent him from obtaining equality with non-protected group members in obtaining employment retention opportunities such as promotions. Further, Plaintiff avers that Defendant has maintained a pattern of discrimination against blacks generally, and Plaintiff in particular, in promotions.

**6.**

But for the illegal actions alleged above, Plaintiff would not have been damaged in demotion and deprivation of an opportunity for continued employment at his level, job advancement and increases in pay, as well as caused to suffer great humiliation and mental anguish from then until now.

## FACTS

**7.**

On July 21, 2020 Plaintiff's mother-in-law was tested for the Covid-19 virus.

**8.**

Plaintiff's mother-in-law did not reside with Plaintiff, as Defendant well knew, and Plaintiff had no exposure to her.

**9.**

Upon learning of the testing, Plaintiff's wife went to live with her mother pending results and to minimize potential for exposure to Plaintiff.

**10.**

On July 22, 2020, as required by corporate policy, Plaintiff contacted Chris Milner (Lead at TIYA) and Joey Milligan (Supervisor at TIYA), both Caucasians, to let them know that his mother-in-law had been tested and that he had no exposure.

**11.**

Ryan Spires (HR Rep.) contacted Plaintiff and told him to self-quarantine until his mother-in-law's test results were had and, if positive, then for 14 days.

**12.**

On July 25, 2020 Plaintiff's mother-in-law learned that she had tested positive for COVID-19.

**13.**

On July 25, 2020 Plaintiff's wife tested with positive results coming back on July 27, 2020.

**14.**

Plaintiff tested July 28, 2020 and received negative results on July 30, 2020 for COVID-19.

**15.**

Plaintiff's wife is her mother's caregiver and is away from the home she had shared with Plaintiff.

**16.**

Plaintiff advised Human Resources Rep. Ryan Spires of his wife's positive test results on August 7, 2020 and further advised that he was without exposure to her.

**17.**

Plaintiff's leave was arbitrarily extended, though he had no exposure to his wife or mother-in-law.

**18.**

Plaintiff's wife then retested August 12, 2020 with results coming back negative on August 15, 2020.

**19.**

On August 17, 2020 Plaintiff notified HR Rep. (Ryan Spires) of his wife's negative results.

**20.**

Spires told Plaintiff to meet with Jessina LKU to get documents to take to an urgent care facility and obtain confirmation that he had not tested positive for COVID-19.

**21.**

Because he could not meet with Jessina unless he came to TIYA facilities, Plaintiff called Jessina and arranged a time to pick up the documents

**22.**

Plaintiff picked up documents as directed by Ryan Spires and took them to urgent care and received a COVID test.

**23.**

Plaintiff was told that his company would get the results within a few hours. Plaintiff called Spires to let him know he had taken the COVID test.  He said he would call when he had the results.

**24.**

Spires called and asked why Plaintiff had gone to Ft. Benning to pick up documents. Plaintiff's response was that he had not been told not to go on base and that he did as he was affirmatively directed by Spires.

**25.**

HR representative Linda LKU called and told Plaintiff to report to work on August 18, 2020 and to go to building 470.

**26.**

Plaintiff reported to work, told his lead (Chris Milner) that he was there but had been instructed to go to building 470.

**27**.

Plaintiff got to building 470 and met with several others (white males) at a conference table. Mike Resty, Danny Leonard, Joey Milligan, Josh, Jake Owens and one other male, who was not Spires.

**28.**

Resty asked if Plaintiff had been at the two COVID meetings of the company, he replied "Yes". Resty then handed Plaintiff two sign-in sheets which he signed.

**29.**

Resty said that he was "pissed off" that Plaintiff had gone on base. He said, "I can terminate you right now" multiple times.

**30.**

Plaintiff tried to speak to explain but was not allowed to speak.

**31.**

Plaintiff was told that he could either resign and get unemployment, quit, or be terminated. Plaintiff said that he did not want to do any of the three as he had a family and needed his job.

**32.**

Resty left the room; the union representative came back in and told Plaintiff that he should beg for his job.

**33.**

Plaintiff tried to speak again but was not allowed to.

**34.**

Another union representative entered the room and offered options.

**35.**

Plaintiff was forced to resign, get rehired, with an $8/hr. pay cut, attend counseling sessions and call a list of people with whom he had never been in contact, move to another shop, stay home 21 more business days with no pay and

was not allowed to use his vacation time.  He was not told that he had twelve weeks of time pursuant to the Family Medical and Leave Act.

**36.**

Plaintiff was required to sign a "last chance" agreement.

**37.**

Thus, the timeline run up to the adverse employment decision was:

   a. July 21-Plaintiff's Mother-in-law was tested for COVID-19;
   b. July 25-Mother-in-law got positive results;
   c. July 25-Plaintiff's Wife tested;
   d. July 27-Plaintiff's Wife received positive results;
   e. July 28-Plaintiff was tested for the virus:
   f. July 30-Plaintiff received negative results;
   g. August 4-Plaintiff's Wife tested negative (Auburn);
   h. August 7-Plaintiff's Wife tested positive (C.R.I)
   i. August 12-Plaintiff's Wife tested negative

**38.**

Plaintiff told Defendant multiple times that at no time was he in proximity to any person testing positive for COVID-19.

**39**.

White persons similarly situated to Plaintiff were exposed to the virus and not required to stay away from work to the extent Plaintiff was, were not fired, rehired and demoted with pay slashed.

## ADMINISTRATIVE PREREQUISITES

**40**.

Plaintiff has complied with all the administrative prerequisites to action under § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5 as follows:

A. On or about November 6, 2020, Plaintiff timely filed a formal charge, (No. 410-2021-01692) of discrimination with the Equal Employment Opportunity Commission (hereinafter referred to as E.E.O.C.) (Exhibit A);

B. Plaintiff has exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this Civil Action, and Counsel for Plaintiff formally requested a Notice of Right to Sue from the E.E.O.C. on November 6, 2020;

C. On January 8, 2021, Plaintiff received a Notice of Right to Sue from the E.E.O.C. (Exhibit B);

D. No administrative prerequisites are required before a Plaintiff files a complaint pursuant to the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. § 1981, thus no administrative requirements.

## CAUSES OF ACTION

### I
### Defendant TIYA'S Violation of Title VII's Prohibition Against Employment Discrimination Race Discrimination -- Disparate Treatment

**41.**

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

**42.**

This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and 42 U.S.C. § 1981A, for relief based upon the unlawful employment practices of Defendant. Specifically, Plaintiff complains of Defendant TIYA's violation of Title VII's prohibition against discrimination in employment based upon his race.

**43.**

During his employment with Defendant TIYA, Plaintiff was a member of a class protected under Title VII and suffered race-based discrimination by his employer, or by its supervisory personnel.

**44.**

As set forth herein, Plaintiff, classified as general maintenance was forced to resign and to be rehired with reduction in seniority and pay from $23.78 per hour to laborer at $15.78 per hour.

**45.**

White employees were not terminated, disciplined and/or otherwise reprimanded for real or pretextual "infractions" of company policy concerning the COVID-19 protocols.

**46.**

Plaintiff, as a Black employee of Defendant TIYA, was therefore treated in a disparate manner and was subjected to Defendant's unfair policies and practices because he was treated in an unequal manner and unlike white employees similarly situated with Defendant. Said unfair practices both limited Plaintiff in his wages and other benefits because of his race, black, and further resulted in his forced resignation from employment on or about August 18, 2020.

**47.**

At all relevant times, Defendant knew that the discriminatory conduct complained of herein was without cause as Plaintiff had consistently satisfied and/or exceeded all the requirements of his position.

**48.**

As a result of Defendant's employment policies, procedures and practices, Plaintiff was unjustly and discriminatorily deprived of equal employment opportunities because of his race.

**49.**

As a further result of Defendant's above-stated actions, Plaintiff has been, is being and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to him as an employee, but denied because of his race in an amount to be proven at trial.

**50.**

The above-stated conduct by Defendant was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

**51.**

Further, Defendant intentionally and/or with reckless indifference, engaged in the above-stated discriminatory practices against Plaintiff, contrary to Plaintiff's federally protected rights as guaranteed to him under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended, and 42 U.S.C. § 1981.

**52.**

The intentional and discriminatory conduct of Defendant TIYA complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to Defendant and others who would commit similar illegal acts.

**53.**

As Defendant TIYA engaged in discriminatory employment practices with malice or with reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended.

## II
## Violation of 42 U.S.C. § 1981's Prohibition Against Employment Discrimination-- Racial Discrimination

**54.**

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

**55.**

This claim is authorized and instituted pursuant to the provisions of 42 U.S.C. § 1981, for relief based upon the unlawful employment practices of Defendant. Specifically, Plaintiff complains of Defendant's violation of § 1981's prohibition against discrimination in employment based upon an employee's race.

**56**.

Plaintiff is African American and during his employment with Defendant TIYA was a member of a class protected under 42 U.S.C. § 1981 against race-based discrimination by his employer, Defendant TIYA, or its supervisory

personnel.

**57.**

At all relevant times, Plaintiff fully, adequately and completely performed all of the functions, duties and responsibilities of his employment with Defendant.

**58.**

At all relevant times, Defendant TIYA had a quarantine policy for employees exposed to persons testing positive for the COVID-19 virus.

**59.**

At all relevant times Defendant arbitrarily and discriminatorily applied the policy, making exceptions for white employees.

**60.**

Plaintiff at no time was exposed to or tested positive for the COVID-19 virus.

**61.**

As a result of Defendant's policies and practices, Plaintiff was unjustly and discriminatorily deprived of equal employment opportunities because of his race.

**62.**

As a further result of Defendant's above-stated actions, Plaintiff has been, is being and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job

assignments due to him as an employee, but denied because of his race and in an amount to be proven at trial.

**63.**

Plaintiff has been damaged as a result in that he has suffered a loss of employment level, status, prestige, pay and benefits, and he has suffered great embarrassment, humiliation, emotional distress and severe mental anguish.

**64.**

Because Defendant's conduct towards Plaintiff was improperly motivated, and was intentional, willful and wanton, Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages.

**65.**

The conduct of Defendant, as set forth herein, in violating Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991 and 42 U.S.C. § 1981 caused injuries, damages and harm to Plaintiff, including, but not limited to, past and future economic loss, past and future non-economic losses, including extreme emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment in the quality of life; and consequential losses.

## III
## Violation of 42 U.S.C. § 1981's Prohibition Against Retaliation-- Racial Discrimination

**66.**

Plaintiff engaged in protected conduct by in filing a charge with the Equal Employment Opportunity Commission alleging discrimination because of his race.

**67.**

Further, following complaints of disparate treatment regarding being required to reapply for his job with an $8.00 per hour pay cut and unfavorable transfer, Plaintiff was told again that he had to reapply for his position after filing the EEOC charge. The reason he was given for this adverse action was pre-textual, relating to the artificially imposed fancy of Resty. Other employees, non-black comparators, were not suffered to pay reduction and transfer, for the same or similar deficits experienced.[1]

**68.**

Plaintiff states that he suffered actionable retaliation by Defendant after engaging in protected conduct, and he is entitled to recover damages for the same.

**69.**

At all times relevant to this action, Plaintiff has acted in good faith and

---

[1] Plaintiff was, after being suffered to re-apply for his position told that he would be restored to his former pay grade but was told that it was the result of further COVID-19 personnel losses.

performed his duties to the best of knowledge and ability.

## 70.

At all times relevant to this Complaint, Defendant has acted intentionally, maliciously, willfully, wantonly, and/or in reckless disregard for Plaintiff's Rights.

## 71.

Defendant's actions toward Plaintiff herein served to deprive him of his federally protected rights to be free of discrimination on account of his race and gender, and to be free from retaliation for engaging in protected conduct.

## 72.

All acts by Defendant complained of herein were intentional and were taken in willful disregard for Plaintiff's federally protected rights.

WHEREFORE Plaintiff respectfully prays:

a.  That summons issue and that Defendant be served as by law provided;

b.  For judgment against Defendant, as follows:

c.  That Plaintiff be awarded declaratory judgment that Defendant has violated Plaintiff's right to be free from discrimination in the workplace pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. § 1981; 42 U.S.C. § 1981A;

d. That the court enter an injunction ordering Defendant TIYA to make Plaintiff whole with full back pay, benefits and reinstatement to a position Plaintiff would have obtained in the absence of discrimination or, in the alternative, front pay;

e. For judgment for Plaintiff for compensatory damages in an amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life and consequential loses;

f. For judgment to Plaintiff for exemplary and/or punitive damages for discriminatory and retaliatory misconduct in an amount to be shown at trial;

g. For an award for reasonable attorneys' fees and costs, including but not limited to expert witness fees, as provided in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(k), 42 U.S.C. § 1981A, 42 U.S.C § 1988;

h. For an award to Plaintiff of pre-judgment and post-judgment interest on any awards at the highest rate allowed by law; and

i. For such other and further relief as this Court deems just and appropriate.

**PLAINTIFF REQUESTS TRIAL TO A JURY
ON ALL CLAIMS TRIABLE BY JURY**

Respectfully submitted this 10th day of March 2021.

                                      */s/ John W. Roper*
                                      John W. Roper
                                      Georgia Bar No.: 614159

The Roper Law Firm
233 12th Street, Suite 602
Columbus, Georgia 31901
Tel: (706) 596-5353
Fax: (706) 780-1014
johnroper@roperlaw.com